IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Ashley Day,<br><br>        Plaintiff,<br><br>   v.<br><br>Julia Buckham,<br><br>        Defendant. | Case No. 3:21-cv-50022<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ashley Day brings this action for defamation and intentional infliction of emotional distress against Julia Buckham, the paternal grandmother of one of Day's children. She has properly invoked this Court's subject-matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332.[1] Buckham now moves the Court to dismiss. For the reasons explained below, that motion [11] is denied.

**I.    Background**

After improperly labeling her original complaint, the Court ordered Day to file an amended complaint and fix her errors. Dkt. 3. She complied. Along with her amended complaint, Day separately filed a document titled "Memorandum in Support of Complaint of Slander and Infliction of Extreme Emotion Distress." Dkt. 5. Because Day brings this case *pro se*, the Court must construe her pleadings

---

[1] Day alleges that she is a citizen of Illinois and Buckham is a citizen of Michigan. Dkt. 4, ¶¶ 3–4.

1

liberally. *Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017). So, the Court considers her separately filed memorandum to be an attachment to her complaint, and thus part of her complaint. *Bradley v. Weber*, No. 20-cv-48-jdp, 2020 U.S. Dist. LEXIS 85305, at *2 (W.D. Wis. Feb. 25, 2020) (treating a separately filed document as a supplement to a *pro se* complaint).

Though Day includes more information in her response to the motion to dismiss, her allegations in the amended complaint—and its associated memorandum—are sparse. She alleges that Buckham repeatedly told the foster parents of Day's biological daughter that Day was a "child sexual predator and had inappropriately touched/sexually molested her children on numerous occasions." Dkt. 4, ¶ 5(a). Day further alleges that Buckham told the foster parents that this was why Day lost custody of her oldest daughter. Day alleges that Buckham communicated this information to Day's daughter's foster parents between January 1, 2018, and October 1, 2020. *Id.* Day further alleges that Buckham repeatedly conveyed the same information to the Illinois Department of Child and Family Services (DCFS) between September 1, 2020, and October 1, 2020. *Id.* ¶ 5(b).

Day's memorandum, filed directly after her complaint, mostly contains legal conclusions and arguments, which the Court cannot accept at this point. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that federal courts accept factual allegations as true on a motion to dismiss but not legal conclusions). It does, however, add a few allegations, which this Court can accept in ruling on a motion to dismiss. *See Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 439 (7th Cir. 1994).

Day alleges that Buckham conveyed this allegedly false information "to place Plaintiff in a bad light and with the hope of being able to gain custody of Plaintiff's minor children." Dkt. 5, at 2. Day further alleges that Buckham knew the information she communicated was false. *Id.* at 5. She further explains that she has never been accused of sexually molesting her children by anyone else. *Id.* Day explains that, as a result of Buckham's actions, she suffers from a variety of mental and emotional distresses, including anxiety, depression, and PTSD. *Id.* at 6.

## II.     Statutory Good Faith Immunity under the Reporting Act

Buckham contends that she is immune from suit. She cites the Illinois Abused and Neglected Child Reporting Act ("Reporting Act"). 325 Ill. Comp. Stat. 5/1 *et seq*. The Reporting Act requires certain persons to report to the DCFS when they have "reasonable cause to believe that a child known to them in their professional capacities may be an abused or neglected child." *Id.* § 5/4(a). The Reporting Act further provides that, regardless of mandate requirements, "any person may make a report if such person has reasonable cause to believe a child may be an abused child or a neglected child." *Id.* § 5/4(f). In exchange, Section 5/9 of the Reporting Act provides those individuals with immunity for referrals and reports made in good faith. 325 Ill. Comp. Stat. 5/9. The statute also presumes good faith. *Id.* ("good faith. . . shall be presumed"). If a person files a report that the person knows is false, however, then he or she commits the offense of disorderly conduct. *Id.* § 5/4(m).

3

Buckham argues that she is entitled to immunity because her statements were made in good faith. Dkt. 11, at 3. Her argument, however, ignores Day's allegation that Buckham knew her communication to the DCFS and to the foster parents was false. Regardless of whether that allegation is proven true, the Court must accept it at this stage.[2] *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019).

Although a presumption of good faith exists, Day's allegations are sufficient to rebut the presumption at this stage. In *Lipscomb v. Sisters of St. Francis Health Services*, 799 N.E.2d 293 (Ill. App. Ct. 2003), the plaintiff brought her eight-year-old daughter to the emergency room because of a fever. The administered tests included a urinalysis, which showed trace amounts of spermatozoa and led defendant's employees to believe the girl may have been sexually abused. *Id.* at 295. After a second urinalysis and a physical examination, the defendant realized the initial result was a mistake, but it then transferred her to another facility that it also owned. *Id.* at 295–96. Notwithstanding the realization that the initial test was wrong, the employees at the new facility again questioned the possibility of abuse, contacted DCFS, subjected the child to additional and repeated examinations, and refused to release the child to her mother. *Id.* at 296. Among other things, the court determined that the defendant was not entitled to a presumption of good faith under the Reporting Act. *Id.* at 299. The court explained that "the allegations

---

[2] Buckham further contends that she did not exceed the limits of her immunity. Dkt. 11, at 5. But that argument misses the mark because it assumes that she was entitled to immunity in the first instance.

4

suggest defendant did not have 'reasonable cause to believe' [the child] may have been an abused child and raised questions of fact regarding defendant's good faith." *Id.* at 300.

The same is true here. Even if the Reporting Act's presumption of good faith applies to Buckham's communication with DCFS and the foster parents, Day's allegations are enough to rebut the presumption. Day's complaint alleges that Buckham knew her communication to DCFS and the foster parents was false. And a false report is not made in good faith, especially when the Reporting Act expressly provides that false reporting amounts to disorderly conduct. § 5/4(m). Furthermore, Day's allegations present more of a reason to question whether "reasonable cause" existed than the allegations presented in *Lipscomb*. There, the employees at the center of the allegations worked at a separate facility than the employees that expressly knew the accusation was wrong. In other words, those allegations at least left open the possibility that the employees at issue acted in good faith. Here, Day's allegations are explicit. She alleges that the communication was knowingly false. That is enough to rebut the presumption. *See also Doe v. Winny*, 764 N.E.2d 143, 154 (Ill. App. Ct. 2002) ("Rather, we believe that a plaintiff must show more than mere negligence to create a question of fact as to a reporter's good faith. To raise a question of fact, the plaintiff must show that the reporter has acted maliciously, dishonestly, or for some improper purpose.").

Thus, at this stage, the Court denies Buckham's motion to dismiss based on statutory good faith immunity. She may raise the argument later if warranted by

5

factual development of the record.

### III. Failure to State a Claim

Buckham next moves to dismiss under Federal Rule of Civil Procedure 12(b) for failure to state a claim. In other words, she challenges the sufficiency of Day's allegations. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

Under Rule 8, the plaintiff must have alleged facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This means that a plaintiff's well-pleaded factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 622, 678 (2009). The Court accepts as true all the plaintiff's well-pleaded allegations and views them in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. "But the proper question to ask is still '*could* these things have happened, not *did* they happen.'" *Carlson v. CSX Transp. Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010) (emphasis in original)).

### a. Intentional Infliction of Emotional Distress

Day alleges that Buckham's actions in sharing allegedly false information amounts to an intentional infliction of emotional distress, in violation of Illinois law. Buckham argues that Day's allegations are not enough to put her on notice of the

6

claims against her. She contends that a weighing of the relevant factors suggests that the allegations are not enough to state a claim. Dkt. 11, at 8–9 (arguing that she is not in a position of authority, had a legitimate purpose for the report, and that Day has not pleaded a unique susceptibility to emotional distress). Buckham also contends that her statements were not made publicly to a media outlet. In making this argument, Buckham seems to assume that the Court would not incorporate Day's separately filed memorandum as part of her complaint. But, as explained above, the Court incorporates the allegations in that memorandum.

Buckham's memorandum in support of her motion to dismiss seems to assume that Day must allege facts to support each element of her claim. Buckham's argument breaks down the elements and the factors courts analyze in determining whether conduct is outrageous. Dkt. 11, at 7–10. But in federal court, a plaintiff need not engage in fact pleading; they are not required to plead facts to support each element of the claim. *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016) (explaining that federal courts require notice pleading, not fact pleading). Instead, federal plaintiffs need only allege facts sufficient to elevate the claim from speculative to plausible. *Twombly*, 550 U.S. at 545. Still, the Supreme Court has recently explained that "to determine what the plaintiff must plausibly allege at the outset of the lawsuit, we usually ask what the plaintiff must prove in the trial at its end." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1014 (2020). So, although notice pleading is still the

7

standard, unsurprisingly, the elements of a claim aid a court in determining whether the allegations plausibly state a claim.

To establish a claim for intentional infliction of emotional distress in Illinois, a plaintiff must show (1) that the defendant's conduct was extreme and outrageous, (2) that the defendant intended to inflict severe emotional harm or knew that the harm was highly likely to result, and (3) that the harm did in fact result. *Motley v. United Airlines, Inc.*, 2017 U.S. Dist. LEXIS 32619, at *10 (N.D. Ill. Mar. 8, 2017) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 79–80 (Ill. 2003)). The level of severity necessary to establish a claim for intentional infliction of emotion distress is extreme, such that no reasonable person should be expected to endure it. "[T]o qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Feltmeier*, 798 N.E.2d at 83. Furthermore, sufficiently pleaded complaints often involve "a defendant who stood in a position of power or authority relative to the plaintiff." *Id.* at 83; *see also Motley*, 2017 U.S. Dist. LEXIS 32619, at *10.

Buckham's argument fails to identify any binding case law analogous to the facts alleged here. But in evaluating whether conduct is extreme and outrageous, courts look to the context of the individual case and consider at least three factors: (1) the power or control the defendant had over the plaintiff, (2) whether the defendant reasonably believed his or her objective was legitimate, and (3) whether the defendant knew that the plaintiff was particularly susceptible to emotional

distress. *Brown v. Kouretsos*, No. 15 C 11076, 2016 U.S. Dist. LEXIS 77727, at 12–13 (N.D. Ill. June 15, 2016). According to the Illinois Supreme Court, extreme and outrageous conduct exists where "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994). Although this Court did not make such an exclamation upon review of the amended pleading and memorandum, it nevertheless finds an IIED claim has been pleaded.

In *Brown*, a court in this district held that the plaintiff had plausibly alleged IIED when the defendant falsely accused her of smoking cannabis on school grounds. The court explained that such allegations may not be enough in other contexts, but when the plaintiff is a grammar school principal, the allegation "could be incendiary." *Id.* at 14. As the court explained, "Brown could have been branded with the scarlet letter of child endangerment. No rational parent would trust their child to the custody of a person accused of being a drug user." *Id.* at 15.

Here, Day's allegations are sufficient to state a claim for intentional infliction of emotion distress. She alleges that Buckham falsely accused her of sexual child abuse and that Buckham knew the accusation was false. A parent's relationship with their child is sacred, and accusations like the one at issue here do irreparable harm. Well beyond the allegations of cannabis use in *Brown*, the Court has no trouble believing that a reasonable member of the community would declare a false accusation of sexual child abuse to be outrageous. Although Buckham was not in a position of power or control over Day in the traditional sense, the same level of

9

power and control is felt by plaintiffs that face the possibility of losing their children and the social stigma that comes with these types of allegations. Furthermore, the allegations negate any sense that Buckham held legitimate objectives. At this stage, the Court must accept Day's allegations as true, and she alleges the Buckham knew the damning report to DCFS and statements to the foster parents were false. And even though no allegations exist indicating that Day was particularly vulnerable to emotional distress, every parent would be especially vulnerable to emotional distress when faced with such allegations. Thus, at this stage, the Court has no trouble holding that Day has plausibly alleged intentional infliction of emotional distress.[3]

    Additionally, cases in other states weigh in favor of denying Buckham's motion to dismiss. *In Powell v. Jones-Soderman*, the District of Connecticut analyzed a case in which the defendant published statements on her website accusing the plaintiff of sexually abusing his daughters. 433 F. Supp. 3d 353 (N.D. Conn. 2020). Although Jones-Soderman had followed the judicial record, in which the plaintiff had been exonerated of those allegations, she believed they were true. The court determined that the plaintiff had failed to establish that he suffered severe emotional distress, but it first acknowledged that the defendant's conduct in publishing the statements was extreme. *Id.* at 377–78. Jones presented a different

---

[3] Buckham additionally argued that her statements were not made publicly. But she has cited no cases for the proposition that IIED cannot lie under these circumstances—when the statements are communicated to DCFS and to foster parents. And the case law does not support the argument anyway. *See Walls v. Jerome*, No. 99 C 3016, 2000 U.S. Dist. LEXIS 6579, at *17 (N.D. Ill. May 9, 2000) (denying dismissal when police officers allegedly made a false report of abuse to DCFS).

10

procedural posture, and it involved statements published on a website, but it remains instructive. Citing similar elements of the claim, the court determined that the accusations were enough to meet the outrageous conduct standard. They were certainly made in a more public fashion, but they were made by someone that purportedly believed she was doing the right thing. Here, although the audience was smaller, Day alleges illegitimate objectives by alleging Buckham knew the statements were false. And as explained above, such a false report is considered disorderly conduct under § 5/4(m) of the statute.

And in *W.T.A. v. M.Y.*, 58 So. 3d 612, 617 (La. App. Ct. 2011), a Louisiana Appellate court reversed a trial court's dismissal of the plaintiff's IIED claim. There, a mother and father accused each other of sexually abusing their minor child. *Id.* at 614. The mother hired the future defendant—Yeager—to provide expert testimony; Yeager was then the only expert to conclude that the father had molested his child. *Id.* After a detailed investigation, that trial court determined that Yeager had coached the child into making false accusations of sexual abuse against the father. The father then sued, claiming intentional infliction of emotional distress, among other claims. *Id.* at 614–15. In determining that the father had sufficiently stated a claim, the court explained: "Of course, no reasonable person could be expected to endure the distress of a person falsely accused of sexual abuse of her or his own child." *Id.* at 617.

Although no Illinois precedential decisions exist to the Court's knowledge, the Court finds that Day has stated a claim for IIED. Thus, Buckham has not met her

11

burden of persuading the Court to dismiss Day's claim. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

### b. Defamation

Day further brings a claim of slander against Buckham for the alleged statements made to DCFS officials and to the foster parents. Dkt. 4, ¶ 5. She contends that these statements amount to slander per se. Dkt. 5, at 3–4. Buckham moves to dismiss for failure to state a claim. Dkt. 11, at 10–11. Buckham again seems to argue that Day must plead facts to support each element of her claim. As explained above, federal pleading standards require only enough facts to create the plausible inference of liability and to put Buckham on notice of the claims made against her. *Twombly*, 550 U.S. at 545; *United States ex rel. Hanna*, 834 F.3d at 779; *see also Maui Jim, Inc. v. SmartBuy Guru Enters.*, 386 F. Supp. 3d 926, 941 (N.D. Ill. 2019) (explaining a claim in federal court for defamation per se is held to the usual notice pleading rules). Here again, Day's allegations are enough.

Defamation in Illinois is the publication to a third party of false, non-privileged statements that cause damages. *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). Defamatory statements are generally those that harm the plaintiff's reputation "in the eyes of the community or deters the community from associating with her or him." *Id.* Some statements are so obviously harmful that they are considered defamatory per se. These include "(1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks

12

integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication." *Id.* (citing *Van Horne v. Muller*, 705 N.E.2d 898, 903 (1998)). The statements that Day alleges Buckham made involve acts that are potentially both criminal and involve fornication. Thus, at this stage, Day's allegations sufficiently state a claim for defamation per se.

Buckham argues that Day has not pleaded that the statements were false. She also contends that the statements were privileged. Dkt. 11, at 11. Lastly, she contends that the statements were not made publicly, and therefore cannot be considered defamatory. *Id.* First, Buckham's contention that Day failed to allege that the statements were false is wrong. Dkt. 5, at 4 ("Defendants actions by knowingly making this false accusation cover all three of the elements of this cause of action."). Second, Buckham's contention that the statements were privileged appears to rely on the same theory as her immunity argument under the Reporting Act. But the Court cannot determine without factual development whether Buckham had a "reasonable cause" to believe her statements were correct. On the contrary, the Court must accept as true Day's allegation that Buckham knew her statements were false. Third, Illinois defamation law only requires that the defamatory statements were communicated to some person other than the plaintiff. *Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1107 (Ill. Ct. App. 1999). Here, Day

13

alleges that Buckham communicated the allegedly false statements to the foster parents and to officials at DCFS. That is enough under Illinois law.

Because none of Buckham's arguments are persuasive, the Court denies her motion to dismiss Day's defamation claim.

### IV. Conclusion

For the foregoing reasons, Buckham's motion to dismiss [11] is denied. Furthermore, the Court strikes Day's motion for a ruling on defendant's motion to dismiss [37] as moot.

Date: November 1, 2021

_____
Honorable Iain D. Johnston
United States District Judge